UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
KEVIN WATKINS,                          :
                        Plaintiff,      :
                                        :      12 Civ. 4635 (DLC)
              -v-                       :
                                        :      OPINION & ORDER
DEREK SMITH; ADRIANE EISEN; BRYAN S.    :
ARCE; WILLIAM K. PHILLIPS; ISMAIL S.    :
SEKENDIZ; LAURIE E. MORRISON; ZAFER A.  :
AKIN; MARJORIE MESIDOR; DEREK T. SMITH  :
LAW GROUP, P.C.; ARCE LAW GROUP, PC;    :
PHILLIPS & PHILLIPS; and JESSICA DUGUE, :
                        Defendants.     :
                                        :
----------------------------------------X

Appearances:

For Plaintiff:
Anil Taneja, Esq.
244 5th Avenue, 2nd Floor
New York, New York 10001

For "Eisen" Defendants:
Bryan S. Arce, Esq.
30 Broad Street, 35th Floor
New York, New York 10004

For "Phillips" Defendants:
Jesse C. Rose
The White Rose Group, LLC
8612 37th Avenue, 2nd Floor
Jackson Heights, New York 11372


DENISE COTE, District Judge:

     Kevin Watkins ("Watkins") asserts that certain attorneys,

their law firms, and their co-conspirator have violated federal

and state law by trying to extort money from him and compete

unfairly with him.  Watkins has failed to plead a violation of

federal law, and the Court declines to exercise supplemental jurisdiction over his state law claims.

BACKGROUND

The following facts are asserted in the amended complaint and taken as true for purposes of this motion.  Watkins represents claimants with discrimination complaints before the Unemployment Insurance Appeal Board, the Equal Employment Opportunity Commission ("EEOC"), and the Merit Systems Protection Board ("MSPB").  All of the defendants, except Jessica Dugue ("Dugue"), are also involved in the representation of claimants with discrimination complaints in front of these same institutions and work from the 35th floor at 30 Broad Street in New York.  These defendants "work together in the same office and as a single interrelated enterprise."

Over the past three years, the defendants developed a plan to sabotage small businesses through schemes involving imposters, enticement, and extortion.  They have targeted approximately 50 to 100 businesses each month.  The defendants send "imposters" to these small businesses in order to use a number of ploys to trick the business owners into making recorded statements of a sexual nature.  The defendants edit the recordings and use them to extort the business owners under the guise of representing these imposters in law suits against the business owners and seeking to "discuss settlement."

Beginning in August of 2010, the plaintiff claims that defendants used unfair tactics against his business. Around August 1, 2010, in order to "suppress" the plaintiff's business, the defendant attorneys began advertising on the internet under the key word "Unemployment," without any intention of offering services to represent the unemployed. In November and December of 2010, the defendants paid "imposters" to pose as prospective clients. The imposters requested appointments with the plaintiff that they failed to keep or appeared for their appointments and described "long drawn out scenarios" that were later proven to be false. On at least one occasion these tactics permitted the defendant attorneys to obtain the contact information for one of the plaintiff's clients.

In January 2012, the defendants selected the plaintiff as the target for another scheme. Around January 31, the attorney-defendants instructed Dugue to make an appointment with the plaintiff. On the day of the appointment, Dugue arrived without necessary documents; she returned four hours later after the plaintiff's other clients had left. Dugue then flirted with the plaintiff, requesting gifts and favors from him. The plaintiff, who had agreed to represent Dugue, appeared at her unemployment hearing on February 6, but Dugue did not appear. After Dugue missed another appointment, the plaintiff stopped representing her.

On February 16, Dugue arrived at plaintiff's office "after hours" and requested that the plaintiff reopen her case, which he refused to do.  Dugue, acting on instructions from the other defendants, attempted to barter telephone answering services and sexual favors in lieu of payment of the plaintiff's retainer. Dugue secretly recorded the conversation.[1]

On May 16, the plaintiff received a Federal Express envelope that had traveled through a New Jersey facility before reaching the plaintiff in New York.  It contained a letter from defendants Derek Smith ("Smith") and Adriane Eisen ("Eisen") demanding "settlement" of Dugue's claims against the plaintiff, threatening to expose the defendant, and instructing the plaintiff to comply by May 25.  The letter was accompanied by a "Draft Complaint."

One of his former clients, Alexander Guerrieri ("Guerrieri"), informed the plaintiff sometime after May 14 that he was being represented by Smith and Eisen before the MSPB. The plaintiff had stopped representing Guerrieri on May 14, after having been accused of "being in league" with the government defendants.  Eisen has told the plaintiff that she does not represent Guerrieri.

---

[1] Watkins learned that Dugue had recorded the February 16 conversation when an audio recording of the conversation was included with the Eisen defendants' July 9 motion to dismiss. Thereafter, Watkins amended his pleading to reflect this fact.

On May 25, the plaintiff filed this action in the Civil Court of the City of New York. The plaintiff pleads six causes of action: 1) civil Racketeer Influenced and Corrupt Organizations Act ("RICO") violations under 18 U.S.C. § 1962(c) and (d); 2) an antitrust violation under 15 U.S.C. § 1; 3) tortious interference with contract; 4) tortious interference with prospective economic advantage; 5) libel; and 6) intentional infliction of emotional harm.

On June 13, 2012, this case was removed to federal court. The defendants in this case fall into two groups. In one group are defendants Derek Smith, Adriane Eisen, Bryan S. Arce, Ismail S. Sekendiz, Laurie E. Morrison, Zafer A. Akin, Derek T. Smith Law Group, P.C., Arce Law Groupe, PC, and Jessica Dugue (collectively "the Eisen defendants"). In the other group are defendants Marjorie Mesidor, William K. Phillips, and Phillips & Phillips (collectively "the Phillips defendants"). The Phillips defendants filed a motion to dismiss the complaint on June 26. The Eisen defendants filed a motion to dismiss on July 9 and attached a number of exhibits to their motion. In an Order dated June 27, the plaintiff was given an opportunity to amend his complaint and instructed that he would have no further opportunity to amend. On July 27, the plaintiff filed his amended complaint.

The two groups of defendants renewed their motions to dismiss on August 27.  Those motions were fully submitted on October 5.[2]  For the following reasons, the defendants' motions to dismiss are granted.

DISCUSSION

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  LaFaro v. New York Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  The court is "not bound to accept as true legal conclusions couched as factual allegations."  Id. at 678.  Accordingly, a court may disregard "threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  Id. at 663.

Applying the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.  "Plausibility thus

---

[2] The motion to dismiss filed by the Eisen defendants is accompanied by five exhibits.  The plaintiff's opposition to the motions to dismiss is accompanied by three exhibits.  The exhibits have not been considered.

depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir. 2011).

The plaintiff's two federal causes of action will be considered first.  Since neither survives the motions to dismiss, the Opinion will then address the exercise of supplemental jurisdiction over the remaining four claims.

2. 18 U.S.C. §§ 1962(c) and (d): Racketeering and Racketeering Conspiracy

The plaintiff asserts that the defendants operated as an association in fact to commit the crime of extortion under federal and state law, and thereby violated the federal RICO statute, 18 U.S.C. §§ 1964(c) and (d).  18 U.S.C. § 1964(c) provides that "any person injured in his business or property by reason of a violation of section 1962 has the right to recover threefold the damages he sustains."  City of New York v. Smokes-Spirits.com, Inc., 541 F.3d 425, 439 (2d Cir. 2008), reversed on other grounds, Hemi Group, LLC v. City of New York, 120 S.Ct. 983 (2010) (citation omitted).  A private plaintiff in such cases must allege "1) a substantive RICO violation under § 1962; 2) injury to the plaintiff's business or property, and 3) that

such injury was by reason of the substantive RICO violation."
Id. (citation omitted).

Section 1962(c) of Title 18 of the United States Code makes
it unlawful "for any person employed by or associated with any
enterprise engaged in, or the activities of which affect,
interstate or foreign commerce, to conduct or participate,
directly or indirectly, in the conduct of such enterprise's
affairs through a pattern of racketeering activity . . . ."  18
U.S.C. § 1962(c).  To state a viable RICO claim pursuant to
section 1962(c), a plaintiff must allege "(1) conduct (2) of an
enterprise (3) through a pattern (4) of racketeering activity."
Sedima S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985).
The following section, Section 1962(d), makes it unlawful for
"any person to conspire to violate" the earlier provisions of
the section.  28 U.S.C. § 1962(d).  If a plaintiff fails to
state a claim pursuant to 28 U.S.C. §§ 1962(a)-(c), a claim
under 28 U.S.C. § 1962(d) must fail as well.  First Capital
Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 182 (2d Cir.
2004).

A RICO enterprise is defined to "include any individual,
partnership, corporation, association, or other legal entity,
and any union or group of individuals associated in fact
although not a legal entity."  Id. at 173 (citation omitted).
To constitute an enterprise, the group must associate together

"for a common purpose of engaging in a course of conduct."
United States v. Turkette, 452 U.S. 576, 583 (1981).  The
enterprise requirement can be satisfied by the existence of an
association in fact, which must have at least three structural
features: 1) purpose, 2) relationships among those associated
with the enterprise, and 3) longevity sufficient to permit these
associates to pursue the enterprise's purpose.  See Boyle v.
United States, 556 U.S. 938, 946 (2009).  Accordingly, a
plaintiff's "conclusory naming of a string of entities does not
adequately allege an enterprise."  First Capital Asset
Management, 385 F.3d at 175 (citation omitted).

     The requirement that the plaintiff demonstrate a pattern of
racketeering activity requires that the plaintiff allege at
least two predicate acts, as defined in 18 U.S.C. § 1961(1).
The predicate acts must have occurred within ten years of each
other, be "related, and either amount to or pose a threat of
continuing criminal activity."  Spool v. World Child Intern.
Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008) (citation
omitted).  The continuity requirement can be satisfied in one of
two ways.  Closed ended continuity is "demonstrated by predicate
acts that amount to continued criminal activity by a particular
defendant."  DeFalco v. Bernas, 244 F.3d 286, 321 (2d Cir.
2001).  This requires the plaintiff to allege a series of
related predicates "extending over a substantial period of

time." First Capital Asset Mgmt., 385 F.3d at 181 (citation omitted). Alternatively, the plaintiff may plead open-ended continuity, which exists when "there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." DeFalco, 244 F.3d at 323. When open-ended continuity is alleged, a court looks to the nature of the RICO enterprise and of the predicate acts. Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997). The Second Circuit has explained that

> [w]here an inherently unlawful act is performed at the behest of an enterprise whose business is racketeering activity, there is a threat of continued criminal activity, and thus open-ended continuity. However, where the enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity.

DeFalco, 244 F.3d at 323 (citation omitted).

The plaintiff has failed to plausibly allege that the RICO enterprise engaged in more than one predicate act. The plaintiff has also failed to allege the continuity that is inherent in the pattern requirement. Lastly, the plaintiff has failed to allege that his business or property suffered a clear and definite injury by reason of the RICO violation. Accordingly, the defendants' motions to dismiss the plaintiff's RICO claims are granted.

10

The plaintiff claims that the defendants committed two acts of extortion,[3] one under New York law and another under federal law when, on or about May 16, 2012, they sent him a threatening letter that demanded settlement of Dugue's false claims against him, and a "Draft Complaint" that was a threat to expose the plaintiff.  Assuming that the plaintiff has adequately pleaded extortion, the plaintiff has alleged only a single instance of extortion.  The violation of parallel provisions of federal and state law does not transform the single incident into multiple predicate acts.

> [I]t is not proper under RICO to charge two predicate acts where on action violates two statutes.  A pattern of racketeering activity requires 'at least two <u>acts</u> of racketeering,' not 'at least two statutory offenses.

See <u>United States v. Kragness</u>, 830 F.2d 842, 860-61 (8th Cir. 1987) (citation omitted) (single drug shipment violated two federal statutes).  For example, in <u>United States v. Walgren</u>, "[t]he defendant committed a single act (a telephone conversation) that coincidentally violated both a state and federal law," and the Ninth Circuit held that a defendant's "RICO conviction cannot be based solely upon this single act, even though that act may have violated two separate laws."

---

[3] While the plaintiff contends that the predicate acts are violations of the law against extortion, he has actually asserted facts which constitute an attempt to extort money from the plaintiff.  The crime of attempted extortion can also serve as a predicate act for a RICO claim.

United States v. Walgren, 885 F.2d 1417, 1426 (9th Cir. 1989).
Nor may a plaintiff "fragment an act that plainly is unitary
into multiple acts in order to invoke RICO." United States v.
Indelicato, 865 F.2d 1370, 1383 (2d Cir. 1989).

The federal and state laws against extortion are parallel
statutes, and a single violation of one of them is not converted
into a second predicate act because the parallel statute is also
violated. A defendant commits the crime of extortion under the
Hobbs Act, 18 U.S.C. § 1951, when he 1) induces the plaintiff,
with the plaintiff's consent, to part with property, 2) through
the wrongful use of actual or threatened force, violence or fear
(including fear of economic loss), 3) in such a way as to
adversely affect interstate commerce. McLaughlin v. Anderson,
962 F.2d 187, 194 (2d Cir. 1992). Under New York law, the crime
of larceny can be accomplished by extortion, which the New York
Penal Law describes as follows:

> A person obtains property by extortion when he compels
> or induces another person to deliver such property to
> himself or to a third person by means of instilling in
> him a fear that, if the property is not so delivered,
> the actor or another will: (1) Cause physical injury
> to some person in the future; or (2) Cause damage to
> property; or (3) Engage in other conduct constituting
> a crime; or Accuse some person of a crime or cause
> criminal charges to be instituted against him; or
> expose a secret or publicize an asserted fact, whether
> true or false, tending to subject some person to
> hatred, contempt or ridicule . . . .

N.Y.P.L. 155.05(e).  Because the plaintiff has failed to satisfy
the requirement of alleging at least two predicate acts, his
complaint fails to state a claim for a RICO violation under §§
1962(c) or (d).

The plaintiff argues that he has more than satisfied the
requirement that he plead at least two predicate acts because he
has alleged that the defendants targeted "approximately 50 to
100 targets each month."  Bald assertions do not serve to give a
defendant fair notice of a claim.  Reddington v. Staten Island
Univ. Hosp., 511 F.3d 126, 131 (2d Cir. 2007).  Allegations that
the attorney-defendants made "extortion[ate] demands" of other
targets or "commit[ed] extortion . . . upon approximately 50 to
100 targets each month" are conclusions of law and need not be
accepted as true.  In sum, the amended complaint is so bare of
factual allegations of a second instance of extortion -- or of
any other predicate act -- that it fails to plausibly allege a
pattern of racketeering activity.

The plaintiff has also failed to plead either closed-ended
or open-ended continuity.  The plaintiff has not pleaded closed-
ended continuity because the only instance of extortion
plausibly alleged in the complaint is the extortion of the
plaintiff that occurred in May of 2012.  The plaintiff's bald
assertion that the defendants extorted 50 to 100 small business
owners each month for the past three years does not satisfy the

notice function that pleading requirements are meant to serve.
Likewise, the complaint fails to allege open-ended continuity.
The complaint itself recognizes that the defendants' primary
businesses are legitimate ones -- the representation of
claimants in front of administrative boards and institutions.
Thus, the nature of the enterprise does not itself suggest open-
ended continuity.  Nor does the nature of the single incident of
extortion suggest that the defendants engaged in extortion as a
regular way of operating their legitimate businesses or that
there is a threat of continued criminal activity.  Once again,
the plaintiff's bare assertion that "the defendants all operated
an association in fact to commit extortion, as a regular way of
doing business, upon approximately 50 to 100 targets each month"
does not plausibly allege that open-ended continuity exists.

        Lastly, the plaintiff's claim also fails because he has
failed to allege that he has already incurred a clear and
definite injury to his business or property by reason of the
defendants' RICO violation.  Smokes-Spirits.com, 541 F.3d at
439; see also Motorola Credit Corp. v. Uzan, 322 F.3d 130, 135
(2d Cir. 2003); First Nationwide Bank v. Gelt Funding Corp., 27
F.3d 763, 768 (2d Cir. 1994).  An injury "is necessary . . . to
establish civil standing" for a RICO violation.  Hecht v.
Commerce Clearing House, 897 F.2d 21, 25 (2d Cir. 1990)(RICO
conspiracy).  In a civil RICO action, the plaintiff is "required

to show that a RICO predicate offense not only was a 'but for' cause of his injury but was the proximate cause as well." <u>Hemi Group, LLC</u>, 130 S.Ct. at 989 (citation omitted).  Furthermore, "a cause of action does not accrue under RICO until the amount of damages becomes clear and definite." <u>First Nationwide Bank</u>, 27 F.3d at 768.

The plaintiff does not claim that the defendants' act of extortion caused any damage to his property or business.  While the predicate act of attempted extortion may provide a foundation for a violation of 18 U.S.C. § 1962(c), a civil RICO plaintiff has an independent burden to allege that he has suffered an injury to his business or property.

Because the plaintiff has failed in these three ways to satisfy the pleading requirements imposed on civil RICO plaintiffs, the plaintiff's claim under 28 U.S.C. § 1962(c) must be dismissed.  In light of the complaint's failure to state a claim for a substantive violation of 18 U.S.C. 1962(a)-(c), the plaintiff's conspiracy claim under 28 U.S.C. § 1962(d) must be dismissed as well.

3. 15 U.S.C. § 1: Restraint of Trade

The plaintiff contends that three groups of the defendants conspired to eliminate competition in a market which consists of those representing clients before the EEOC and MSPB.  The

15

plaintiff asserts that these three groups used extortion, fraud, and unethical tactics, in violation of 15 U.S.C. § 1.

Section 1 of the Sherman Act declares illegal "[e]very contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. Although the language is capacious, it has been interpreted to "outlaw only unreasonable restraints" on trade. Texaco Inc. v. Dagher, 547 U.S. 1, 5 (2006) (citation omitted). In order to state a claim under Section 1, a plaintiff must allege (1) a contract, combination or conspiracy between two legally distinct entities, (2) in restraint of trade; (3) affecting interstate commerce. See E&L Consulting, Ltd. V. Doman Indus. Ltd., 472 F.3d 23, 29 (2d Cir. 2006); Maric v. Saint Agnes Hosp. Corp., 65 F.3d 310, 313 (2d Cir. 1995).

Some types of conduct are so anticompetitive that they constitute per se violations of the Sherman Act, but most practices are analyzed under the balancing analysis known as the rule of reason. E&L Consulting, 472 F.3d at 29. The parties agree that the rule-of-reason analysis applies to this claim. The rule-of-reason inquiry requires, at the motion to dismiss stage, that the plaintiff identify the relevant market affected by the challenged conduct and allege an actual adverse effect on competition in the identified market. Electronics

16

Communications Corp. v. Toshiba America Consumer Prod., Inc.,
129 F.3d 240, 244 (2d Cir. 1997); see also E&L Consulting, 472
F.3d at 30-31 (2d Cir. 2006).

      The plaintiff's Sherman Act claim fails because, among
other things, the plaintiff has failed to plausibly allege that
the defendants' extortion scheme has had an actual adverse
effect on competition within the defined market.  The complaint
simply asserts in conclusory fashion that "[t]he defendant
attorney's use of extortion to suppress competition is an unfair
business practice that reduces competition in the marketplace."
The only targeted business that is named in the amended
complaint is the plaintiff's.  In sum, the plaintiff's complaint
does not plausibly allege that the defendants' actions have
affected competition in the market for the representation of
clients before the EEOC and MSPB.

4. Supplemental Jurisdiction

      Pursuant to 28 U.S.C. § 1367,

      in any civil action of which the district courts have
      original jurisdiction, the district courts shall have
      supplemental jurisdiction over all other claims that
      are so related to claims in the action within such
      original jurisdiction that they form part of the same
      case or controversy under Article III of the United
      States Constitution.

28 U.S.C. § 1367.  The district court may, however, decline to
exercise jurisdiction over state law claims if the court has
dismissed all of the claims over which it had original

jurisdiction.  18 U.S.C. § 1367(c); see also Carlsbad Tech.,
Inc. v. HIF Bio, Inc., 556 U.S. 635, 639-40 (2009).  Indeed, the
Second Circuit has repeatedly advised that "if a plaintiff's
federal claims are dismissed before trial, the state law claims
should be dismissed as well."  Oneida Indian Nation v. Madison
Cnty, 665 F.3d 408, 437 (2d Cir. 2011) (citation omitted).

The plaintiff does not suggest that diversity jurisdiction
exists.  Because this Court has dismissed the plaintiff's
federal claims, the "values of judicial economy, convenience,
fairness, and comity" weigh in favor of also dismissing the
plaintiff's state law claims.  Carnegie-Mellon Univ. v. Cohill,
484 U.S. 343, 350 (1988).  Accordingly, the Court declines to
exercise supplemental jurisdiction over the claims for tortious
interference with contract, tortious interference with
prospective economic advantage, libel, and intentional
infliction of emotional harm.

CONCLUSION

The defendants' August 27 motions to dismiss are granted. The federal claims are dismissed and the Court declines to exercise supplemental jurisdiction over the remaining claims.

SO ORDERED:

Dated:     New York, New York
           November 19, 2012

_____
DENISE COTE
United States District Judge